UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA SARGENT,                              Case No. 09-13910

    Plaintiff,                    Nancy G. Edmunds
vs.                                          United States District Judge

COMMISSIONER OF                              Michael Hluchaniuk
SOCIAL SECURITY,                             United States Magistrate Judge

    Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

## I. PROCEDURAL HISTORY

  A. <u>Proceedings in this Court</u>

On October 4, 2009, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G. Edmunds referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability insurance benefits.  (Dkt. 3).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 11, 14).

  B. <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 17, 2006, alleging that she became

unable to work on September 13, 2005.  (Dkt. 9, Tr. at 137).  The claim was

initially disapproved by the Commissioner on August 9, 2006.  (Dkt. 9, Tr. at 95-

99).  Plaintiff requested a hearing and on October 20, 2008, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Michael Wilenkin, who

considered the case *de novo*.  In a decision dated February 3, 2009, the ALJ found

that plaintiff was not disabled.  (Dkt. 9, Tr. at 5-17).  Plaintiff requested a review of

this decision on March 27, 2009.  (Dkt. 9, Tr. at 178-81).  The ALJ's decision

became the final decision of the Commissioner when, after the review of additional

exhibits[1] (AC-Exhibits B12E, B15F, and B16F, (Dkt. 9, Tr. at 1-4), the Appeals

Council, on August 14, 2009, denied plaintiff's request for review.  (Dkt. 9, Tr. at

1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).


For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

---

[1] In this circuit, where the Appeals Council considers additional evidence but
denies a request to review the ALJ's decision, since it has been held that the record
is closed at the administrative law judge level, those "AC" exhibits submitted to
the Appeals Council are not part of the record for purposes of judicial review.  *See*
*Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*,
96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the
administrative record is limited to the ALJ's decision, which is the final decision of
the Commissioner, the court can consider only that evidence presented to the ALJ.
In other words, Appeals Council evidence may not be considered for the purpose
of substantial evidence review.

motion for summary judgment be **DENIED**, that the findings of the Commissioner

be **REVERSED**, and that this matter be **REMANDED** for further review and

investigation.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 46 years of age at the time of the most recent administrative

hearing.  (Dkt. 9, Tr. at 50).  Plaintiff's relevant work history included

approximately eight years as an accounts specialist.  (Dkt. 9, Tr. at 174).  In

denying plaintiff's claims, defendant Commissioner considered fibromyalgia,

bilateral carpal tunnel, mild multilevel cervical and lumbar degenerative disc

disease, and depression as possible bases of disability.   (Dkt. 9, Tr. 23).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

September 13, 2005.  (Dkt. 9, Tr. at 23).  At step two, the ALJ found that plaintiff's

impairments were "severe" within the meaning of the second sequential step.  *Id*.

At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 9, Tr. at

24).  At step four, the ALJ found that plaintiff could not perform her previous

clerical work.  (Dkt. 9, Tr. at 27).  At step five, the ALJ denied plaintiff benefits

because plaintiff could perform a significant number of jobs available in the

Report and Recommendation
Cross Motions for Summary Judgment
*Sargent v. Comm'r*; 09-13910

national economy.  (Dkt. 9, Tr. at 25).

The ALJ found that plaintiff had the residual functional capacity to perform a limited range of sedentary work.  Specifically, plaintiff could lift 10 pounds occasionally; lift up to 10 pounds frequently; sit for six of eight and stand or walk for two of eight hours in a work day with a sit/stand option; push or pull without limitation; perform postural activities occasionally but none that require twisting or torquing of the neck or torso throughout the extreme ends of range of motion, and never climbing stairs, ladders or the like; perform any manipulative functions not requiring excessive or forceful gripping and grasping maneuvers, or torquing or twisting the wrists throughout the extremes of range of motion, and not involving repetitive fine manipulation; see, hear and speak without limitation; and perform work in any environment.  Mentally, the ALJ found that plaintiff could understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers where contact is limited; respond appropriately to work pressures in a usual work setting where the pace of productivity is not dictated by an external source over which she has no control; and respond appropriately to changes in a routine work setting with the same proscriptions.  (Tr. at 12).

B.     Plaintiff's Claims of Error

Plaintiff asserts two claims of error.  (Dkt. 11).  The first claimed error is

that the ALJ failed to give due deference to the opinion of her treating physician, Dr. Bradford Barker. Plaintiff argues that Dr. Barker's opinion is supported by objective medical evidence and not inconsistent with the substantial record evidence and is, therefore, entitled to controlling weight. Plaintiff also asserts that the ALJ failed to properly account for her mental impairments and posed a faulty hypothetical to the vocational expert in doing so. Specifically, plaintiff claims that the ALJ did not account for his conclusion that plaintiff suffers from depression and failed to factor her moderate difficulties with social functioning and maintaining concentration, persistence, and pace.

C.    Commissioner's Counter-Motion for Summary Judgment

According to the Commissioner, the ALJ expressly found that Dr. Barker's opinions were not consistent with the opinions of her other treating physicians and their findings. The ALJ also found that Dr. Barker's opinions were inconsistent with his own report about plaintiff's activities, which were inconsistent with his "extreme limitations." The Commissioner also contends that the ALJ accommodated all of plaintiff's credible mental impairments.

III.    DISCUSSION

A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

Report and Recommendation
Cross Motions for Summary Judgment
*Sargent v. Comm'r*; 09-13910

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

     If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Analysis</u>

     In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The

opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

Under § 404.1527(d)(2), a treating source's opinion may be rejected or given less weight where the "supportability" of the doctor's opinion is insufficient, § 404.1527(d)(3), or his opinion is not "consistent" with the record as a whole, § 404.1527(d)(4).  *Id.*  When reviewing the ALJ's reasoning for this purpose, it is critical to remember that the Court is "reviewing the ... decision to see if it implicitly provides sufficient reasons for the rejection of [the treating source's] opinion ... not merely whether it indicates that the ALJ did reject [that] opinion." *Id.*  And, where a claimant complains that the hypothetical question posed by the ALJ to the VE, which posited limitations on the claimant that were less severe than

those found by the treating physicians, this "is essentially no more than a different way of challenging the weight given to the opinions" of the treating sources.  *Id.*

An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."  *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir.*, *Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").  "By independently reviewing and interpreting the laboratory reports the ALJ impermissibly substitute[s] his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."  *McCain*, 58 Fed.Appx. at 193.

When evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1527(c), 20 C.F.R.

§ 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to

investigate the facts and develop the arguments both for and against granting

benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007)

(Where an ALJ discounts the opinions of a treating physician because the record

includes virtually no medical records of plaintiff's treatment with that physician,

the ALJ should perform a further investigation pursuant to SSR 96-5p.).  The

regulation requires the ALJ to give good reasons for the weight given to the

treating source's opinion and, if this procedural requirement is not met, a remand

may be required even if the decision is otherwise supported by substantial

evidence.  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th

Cir. 2004).

 Based on the foregoing principles and standards, the undersigned concludes

that there are significant flaws in the ALJ's weighing and evaluation of the treating

physician evidence such that a remand and further investigation is warranted.  In

this case, there is seeming inconsistency among plaintiff's treating physicians

about her limitations.  For example, on September 24, 2007, plaintiff's

rheumatologist, Dr. James Leisen wrote "Patient is due to come off work disability

in March 2008.  I suggested that she return to work.  She could have aches and

pains at work just as much as she can have when not working. In my view, the

chronic pain does not mean that there is ongoing joint damage." (Tr. 265). Dr.

Leisen seemingly contradicts himself only four months earlier, when he wrote:

> From the practical point of view, I see no way that this patient can be gainfully employed not because of any impairment, but because of unpredictable, chronic musculoskeletal pain, which would make her a poor candidate for employment because of unpredictable absences from work and even when working, poor work performance. I have suggested that she stop trying to go to work and live on the income that is provided by her husband. In this way, she can take the stress off herself of "finding a job." She can control her pain by her level of activity at home. Suggested the patient consider alternatives to conventional medical intervention such as acupuncture or other homeopathic modalities.

(Tr. 270). In April 2007 plaintiff's plastic surgeon, Dr. Janevski, who performed

her earlier carpel tunnel surgeries, opined that she was capable of "office type"

work. (Tr. 272). Dr. Janevski expressly reserved any opinions about the impact of

her fibromyalgia to a rheumatologist. Thus, his opinion appears to be limited to

the impact of her carpel tunnel syndrome at that time. Plaintiff did, however, have

additional hand/elbow surgeries after this date, on January 30, 2008. (Tr. 344).

Three months after surgery, in April 2008, her surgeon, Dr. Paul Shapiro,

recommended a functional capacity evaluation to help delineate her level of

function. (Tr. 341).

     In April 2008, Dr. Kopparam, apparently conducted a physical capacity

evaluation of plaintiff, completed a questionnaire in which she opined that plaintiff

could occasionally lift and carry less than 5 pounds, sit for less than 2 hours in an 8-hour workday, stand/walk less than 2 hours in an 8-hour workday, and walk less than 1 block. (Tr. 337). Dr. Kopparam also opined that Plaintiff could not handle work stress. (Tr. 337). Also in April 2008, plaintiff was examined by Dr. Jeffrey Fischgrund, who ruled out surgical intervention and referred plaintiff for pain management services. (Tr. 340).

In September 2008, Dr. Bradford Barker performed nerve conduction studies in both lower extremities showed chronic denervation changes showing L4, L5, and S1 radiculopathy. (Tr. 373). At that time, Dr. Barker also completed an assessment in which he opined that plaintiff not lift and carry up to 10 lbs. (Tr. 366). He further opined that plaintiff could sit for up to 15 minutes at a time, for a total of 2 hours in an 8-hour day, stand for up to 5 minutes at a time for a total of 2 hours in an 8-hour day, and walk for up to 10 minutes at a time, for a total of 1 hour in an 8-hour day. (Tr. 367). Dr. Barker limited plaintiff's overhead reaching to less than 10 minutes and stair climbing to once or twice daily. (Tr. 368-69). He additionally opined that plaintiff could not drive, or work at unprotected heights, or around vibrations, moving machinery and mechanical parts, humidity, dust, or extreme temperatures. (Tr. 370). The ALJ found these limitations to be inconsistent with Dr. Barker's notations of plaintiff's activities of daily living and Dr. Barker's prior assessment of plaintiff's physical capacity. Plaintiff required

17

occasional assistance with dressing, used a shower chair to bathe, made simple, mostly pre-prepared meals 2-3 times a week, required assistance with laundry, which she did for one hour, twice weekly.  She stated that she was unable to vacuum, push a spray bottle pump, and could not do any yard work.  Plaintiff indicated that she could drive and did food shopping every two weeks.  She could walk 5-10 minutes before needing a rest.  Plaintiff indicated that she had no hobbies or social activities outside the home because of pain and fatigue and primarily left the house for medical appointments.  (Tr. 145-150)

In July 2007, Dr. Barker completed a similar assessment in which he found that plaintiff could sit 15-20 minutes, once per day, standing 15 minutes once per day, could do no "on the job" driving, no climbing, squatting, bending, or kneeling. He also concluded that she could only push/pull up to 5 minutes once per day, could perform light grasping for 10-15 minutes once per day, and she should avoid fingering, typing, and reaching overhead or below shoulders.  Dr. Barker also noted that plaintiff should avoid all lifting and carrying of any weight noted on the form, but hand-wrote that plaintiff could lift up to 5 pounds once per day.  (Tr. 383).  Dr. Barker also noted that plaintiff's limitations were based on his uncontrolled fibromyalgia, uncontrolled pain, and unstable medical status.  He indicated that his opinions were based on his clinical expertise, his speciality, the plaintiff's self-report, diagnostic tests, and clinical examinations.  (Tr. 383)

The ALJ's stated reasons for affording Dr. Barker's opinions little weight are not supported by the record. (Tr. 26).[2] The plastic surgeon's opinion of plaintiff's ability to perform clerical work in April 2007 (which seems unrelated to the impact of her fibromyalgia) is nearly irrelevant, given her subsequent hand/elbow surgery in January, 2008. The ALJ also does not explain why the pain management physician's opinion in May, 2007 that plaintiff was unable to work due to unpredictable musculoskeletal pain and the resulting excessive absenteeism should be disregarded. The ALJ rejects Dr. Kopparam's opinion because she did not have any long-term treating relationship with plaintiff. However, Dr. Kopparam's evaluation appears to have been done at the request of plaintiff's surgeon, Dr. Shapiro, who was treating plaintiff throughout 2008. Dr. Kopparam's evaluation should be viewed in context with Dr. Shapiro's course of treatment, not in isolation. But again, these assessments not do appear to be related to plaintiff's fibromyalgia.

Dr. Barker is one of the few physicians who treated plaintiff consistently and through a longer period of time (1/10/2007 through 9/17/2008), and addressed the spectrum of her conditions, as opposed to a single component as many of the other

_____

[2] The ALJ found it significant that no physician opined as to plaintiff's ability to work until January 2007, however, plaintiff is insured until September, 2011, so the ALJ had a duty to assess whether plaintiff was eligible for benefits at any point before her eligibility expired, not simply whether she has proven disability from the alleged on-set date.

Report and Recommendation
Cross Motions for Summary Judgment
*Sargent v. Comm'r*; 09-13910

physicians did.  The ALJ found his 2008 opinion of plaintiff's limitations to be

inconsistent with his 2007 determination, but they are nearly identical, save a few

points that might have been clarified had Dr. Barker been re-contacted.

Specifically, on both evaluations, Dr. Barker concluded that plaintiff could not lift

any weight "up to 10 lbs" - the lowest weight category on both forms.  On the

earlier form, Dr. Barker handwrote that plaintiff could lift and carry up to five

pounds, once per day, which the ALJ did not deem "extreme" and unsupported by

the medical evidence.  On both evaluations, Dr. Barker concluded that plaintiff

could not drive.  On the earlier form, Dr. Barker hand-wrote that she could not do

any driving "on the job."  The ALJ rejected Dr. Barker's opinions, in part, on the

alleged "inconsistency" with plaintiff's ADLs, given that plaintiff indicated that

she can, and does, drive.  Given that both of Dr. Barker's assessments are virtually

identical save these two issues on which the ALJ placed such significance, in the

view of the undersigned, the ALJ should have contacted Dr. Barker to clarify his

opinions.

The undersigned is also concerned that the ALJ did not fully assess

plaintiff's fibromyalgia under standards required by the Sixth Circuit given that an

analysis of plaintiff's subjective pain complaints is critical and that a purported

"lack of objective medical evidence" is not a proper basis to reject a treating

physician's opinion when evaluating fibromyalgia.  Much of the ALJ's rejection of

Dr. Barker's opinion is the alleged lack of foundation in "objective medical evidence." This course has been repeatedly rejected in cases addressing the assessment of fibromyalgia. The Sixth Circuit noted that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Canfield v. Comm'r of Soc. Sec.*, 2002 WL 31235758, *1 (E.D. Mich. 2002) (discussing how it is "nonsensical to discount a fibromyalgia patient's subjective complaints on the grounds that objective medical findings are lacking"). Based on the foregoing, the undersigned concludes that this matter should be remanded for further review and investigation. In light of the foregoing conclusions, the undersigned also suggests that the ALJ should re-assess plaintiff's credibility, subjective pain complaints, and mental impairments in the context of her fibromyalgia.

D.   <u>Conclusion</u>

The District Court is permitted, pursuant to 42 U.S.C. § 405(g), to enter a judgment reversing the findings of the Commissioner and remanding for a hearing. In light of the above determination that the ALJ did not properly make findings relating to the treating physician evidence, it is recommended that the case be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration.

*Faucher v. Secy of Health and Human Serv.*, 17 F.3d 171, 175-76 (6th Cir. 1994).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further review and investigation.

Date:  February 11, 2011                s/Michael Hluchaniuk_____
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 11, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joshua L. Moore, Vanessa Mireee Mays, AUSA, and the Commissioner of Social Security.

                                         s/Darlene Chubb_____
                                         Judicial Assistant
                                         (810) 341-7850
                                         darlene_chubb@mied.uscourts.gov